## Spackman *versus* Steidel et ux.

88　　453
29 SC　　4

An action for damages will not lie for the obstruction of a right of way, alleged to have arisen from an implied covenant contained in a reference in a deed to a street as a boundary, where possession of such street was never given or taken under the deed, and the owner had built thereon and had exclusive possession thereof for more than twenty-one years before suit brought, without any denial of title.

88　　453
f220　　164
220　　165
f 36 SC　413

88　　453
d224　　563

January 24th 1879.　Before Sharswood, C. J., Mercur, Gordon, Paxson, Woodward, Trunkey and Sterrett, JJ.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county :* Of January Term 1879, No. 16.

Trespass by Herman Steidel and Julia, his wife, in right of said

[Spackman *v.* Steidel.]

wife, against Morris Spackman to recover damages for an alleged obstruction of a right of way.

On March 30th 1850, Josiah Leeds conveyed to Burton & Lanning a lot of ground at the northeast corner of Sixth street and Columbia avenue, one hundred feet on Columbia avenue; thence northward along a twenty-feet street, forty-seven feet; thence eastward alone the head of the said twenty-feet street to a point; thence northward; thence westward to Sixth street; thence to the place of beginning, together with the soil of the said twenty-feet street. On the 7th of June 1850, Burton & Lanning purchased from Leeds another lot of ground, on the north side of Columbia avenue, one hundred and twenty feet east of Sixth street, extending northward along the east side of said twenty-feet street forty-seven feet; thence eastward ninety-five feet six inches; southward forty-seven feet; and thence westward to the place of beginning, with the use of a three-feet wide alley on the north, extending into Randolph street.

Burton & Lanning thus being the owners of two hundred and fifteen feet six inches of land fronting on Columbia avenue, extending from Sixth street east, to what is now Mifflin street or Randolph street, and running north ninety-eight feet, having purchased by various conveyances not only the soil of this twenty-feet street, but all the land surrounding, built a large factory for the manufacture of paper hangings in the year 1850, and fenced in the lot for one hundred and twenty feet east from Sixth street, which included the twenty-feet street mentioned, and used it in common with all the land for the purposes of their extensive business. To the east of this one hundred and twenty feet was a row of brick houses, which had been built by Vankirk & Leeds, then partners, some forty or forty-five years ago. These houses built upon part of the two hundred and fifteen feet six inches owned by Burton & Lanning, were occupied by their workmen. The westernmost of these houses, (now the plaintiff's), had a solid wall on its western side, and no openings of any kind for light, air, egress or otherwise, had been made or were ever afterwards made.

Leeds, the grantor of Burton & Lanning, having absorbed the soil of the twenty-feet street, had laid out before his conveyance to them a three-feet wide alley, to the rear of the houses, and had granted to such houses the use of the alley. Burton & Lanning had their manufactory there for about fifteen years, when it was destroyed by fire. Subsequently deducing title from them, the defendant, Mr. Spackman, bought all the land to the west and north of the houses running west to Sixth street, one hundred and twenty feet on Columbia avenue, and which includes the soil of the street spoken of, and built extensive improvements upon it.

On the 28th of June 1854, Burton & Lanning conveyed the houses to the east of the one hundred and twenty feet running to Mifflin or Randolph street to Henry Gerker, who had charge of

these houses as their agent to collect the rents. In the deed to Gerker, the twenty-feet street was mentioned as a descriptive line, as follows :

"A lot of ground situate on the north side of Columbia avenue, at the distance of one hundred and twenty feet east of Delaware Sixth street; thence north along a twenty-feet wide street forty-seven feet to a three-feet wide alley ; thence eastward ninety-six feet ; thence southward forty-seven feet; thence westward ninety-five feet six inches."

On December 27th 1869, Gerker conveyed to Steidel (the plaintiff) "a lot of ground situate on the north of Columbia avenue, one hundred and twenty feet east of Sixth street, thence north along the east side of a twenty-feet wide street, forty-seven feet to a three-feet wide alley; thence east thirteen feet ten and one-eighth inches; thence south forty-seven feet; thence west along Columbia avenue twelve feet eight and a half inches." (This is the westernmost of the houses.) "Together with any and all benefit which may now exist, or which shall hereafter accrue to the said premises, by reason of vacation or otherwise, of the said twenty-feet wide street, together with the privilege of the said three-feet wide alley."

The right to this twenty-feet street was the cause of the contention in this suit. It was not disputed that this twenty-feet street only existed upon paper, and was only known by reference to the deeds. It was not on the city plans. The mention of this twenty-feet street was a reference from the old deeds, by a conveyancer as a descriptive line or mark, and nothing more. The *locus in quo* had been in the exclusive use of the defendant and those under whom he claims for more than twenty-one years before suit; and when defendant was building, no objection was made by the plaintiff, nor was any complaint made until after the building had been completed.

The plaintiff submitted the following point, to which is appended the answer of the court :

That the said twenty-feet wide street being called for a boundary to the plaintiff's lot in her title, she has, in law, a right to the use of the street, and if the defendant has infringed that right, then the verdict should be for the plaintiff.

Ans. "To this I say that this street, being her western boundary, there was an implied covenant to open it as a street—an equitable grant as an easement, and she has a paper title thereto, unless abandoned by her, or gained by the defendant under the Statute of Limitations."

The following are points of defendant, with the answers of the court thereto :

1. The deed of Josiah Leeds and wife to Burton & Lanning, dated March 30th 1850, passed to the vendees all the title to the alleged twenty-feet wide street, and by regular conveyances from

[Spackman *v.* Steidel.]

said Burton & Lanning, the title to the same became and is vested in the defendant.

Ans. "That may be so; and I affirm this point, subject to the rights of the plaintiff, as I have explained in my general charge to you."

2. The subsequent deed, dated June 7th 1850, of said Leeds and wife to said Burton & Lanning, conveying other premises one hundred and twenty feet east of Sixth street, with the use of a three-feet wide alley, and without mention of any right to the said alleged street, except for convenience as a westernmost boundary, was notice that no right to the soil of said street, or use for any purpose, was granted to those claiming under the said deed of June 7th 1850.

Ans. "I refuse so to charge."

3. The mere mention in deeds of the alleged street as a boundary, if there was in point of fact no such street, gives to the plaintiff no claim or right against defendant of any nature and kind.

Ans. "This point I also refuse."

4. The undisputed evidence being that for more than twenty-one years prior to the institution of this suit, the western line of plaintiff's property was and is a solid brick wall for most of the depth, without any openings for egress or ingress, or for light or air, and the small back yard being enclosed with a fence, without any opening to the west, coupled with the fact that no claim of right was made for over twenty-one years prior to the purchase by the defendant, is conclusive evidence to prevent a recovery by the plaintiff in this case.

Ans. "I decline so to instruct you, but I say these are questions of evidence, and for you to consider, as I stated in my general charge."

5. The evidence being that the defendant and those through whom he derives title, having been in open, notorious, visible, adverse and exclusive possession for more than twenty-one years prior to this suit, the defendant has, by law, a valid title to the *locus in quo.*

Ans. "I do not intend to give you a binding instruction. If you find from the evidence such a possession, the defendant is entitled to a verdict."

6. Upon the whole evidence, the jury are instructed to find a verdict for defendant.

Ans. "I decline so to instruct you."

In the general charge the court, Ludlow, P. J., inter alia, said:

"This is an action brought to recover damages against the defendant, upon the allegation that he has closed up a certain street, and deprived the plaintiff of its use and enjoyment, and from light and air to her premises, which she claims as her legal right. * * *

"From all the evidence, it does not appear that this twenty-feet

[Spackman *v.* Steidel.]

wide street was ever opened. It only existed on paper; and even as laid down on paper it opened into or led into nothing; it was even on paper what we call a blind alley.

"The plaintiff claims through divers mesne conveyances from Burton & Lanning, and in them her property is described as bounded on its west side by a certain twenty-feet wide street. [This boundary not being a public street, no right to the fee ever passed; but the description in the deed calling for the boundary is an implied covenant that if the street constituting the boundary does not exist, it shall be laid out, and which operates as an equitable grant of the right of way, binding not only the parties, but third persons. This right cannot be lost by disuse or non-user; and the only questions of fact that arise are two:]

"1. Whether the plaintiff and those under whom she claims did not abandon this right?

"2. Whether the defendant and those under whom he claims have had open, hostile and adverse possession for more than twenty-one years.

"I do not wish to go over all the testimony, but will merely indicate the prominent features. [The plaintiff has what is technically called the paper title, but every witness that has been examined —I will not go over their testimony in detail—says that he never knew and never heard of the existence of such a street.] The place on the paper would locate it in a gully leading to an old stonequarry. A number of witnesses, beginning with Mr. Vankirk, who, with his partner, Leeds, built the house of the plaintiff, a great many years ago, certainly more than thirty years, and Mr. Lanning, who put up the factory there in 1850, and many others whose names I do not now recall, testify that this *locus in quo* was fenced across up to the plaintiff's house, and in the exclusive use and enjoyment by the parties through whom the defendant claims title, and by the defendant himself, for nearly thirty-five or forty years. In point of fact, it seems that no one knew or heard of the existence of this street until lately discovered as a boundary, in the deeds by the surveyor. In rebuttal the plaintiff called one witness, who said he thought the curb was turned at this point; but he was not positive whether the curb was turned or whether it was sunk to allow mules and teams of the defendant to pass over into his premises; while the defendant's testimony shows that the curb is not turned, and is on the same line, without turn, as it existed when first placed there by the city authorities."

The verdict was for plaintiff for $125, and after judgment thereon, defendant took this writ and assigned for error the answers to the above points and the portions of the charge in brackets.

*Edward H. Weil* and *Henry T. Coleman*, for plaintiff in error. —The street in question was laid out on paper by old deeds nearly

fifty years ago.    It led to nothing, gave access to nothing, but was merely a blind alley or *cul de sac.*    Not being a public street, the owner of the soil of it and of all the land surrounding it, had the right to extinguish it, if it ever had an existence ; and in no way could this be more effectually done than by placing upon record the conveyance of the soil, without reservation or burden of servitude. It is submitted that the deed to Gerker by Burton & Lanning, is no implied covenant to open a street or alley which had never been opened, and which, not being a public street or highway, had been vacated and absorbed by its rightful owner : Union Burial Ground Society *v.* Robinson, 5 Whart. 18 ; Robinson *v.* Meyers, 17 P. F. Smith 17.

While an easement would not become extinguished by disuse, or lost by non-user, it is equally well settled that a denial of the title, or other act on the adverse part to quicken the owner, or an enjoyment inconsistent with its existence for a period of twenty-one years, amounts to an extinguishment : Erb *v.* Brown, 19 P. F. Smith 219 ; Lindeman *v.* Lindsey, Id. 100 ; Nitzell *v.* Paschall, 3 Rawle 82 ; Bombaugh *v.* Miller, 1 Norris 209.

*Thomas Greenbank,* for defendant in error.

Mr. Justice MERCUR delivered the opinion of the court, May 5th 1879.

This was an action of trespass on the case to recover damages for the alleged obstruction of a right of way.    The land over which the defendants in error claimed the right, lies immediately west of and adjoining their lot; but in the adverse possession of the plaintiff in error.    Both parties claim under title derived from Leeds. The claim of the defendants in error rests on an implied grant, by reason of their grantors having designated the western boundary of the lot as a twenty-feet street.

It is settled law in this state, that when a public street or highway is called for as a boundary in a deed, the grantee takes title in fee to the middle of the street, if the grantor had title to it, and did not expressly or by clear implication reserve it: Paul *v.* Carver, 12 Harris 207 ; Same case, 2 Casey 223 ; Cox *v.* Freedly, 9 Id.   124 ; Trutt *v.* Spotts, 6 Norris 239.    Where the street called for a boundary is not a public highway, nor dedicated to public use, the grantee does not take title in fee to the centre of it, but by implication acquires an easement or right of way only over the lands: O'Linda *v.* Lothrop, 21 Pick. 292; Robinson *v.* Myers, 17 P. F. Smith 9.

It appears that the existence of the street in question, had been recognised on paper, at an early day; but it was not on the city plan, and had no marks or signs on the ground designating it.    It was referred to by Leeds in his deed of 1850, under which the

[Spackman v. Steidel.]

defendants in error claim, as a twenty-feet street; but as the learned judge says, in his charge to the jury, "it does not appear that it was ever opened. It only existed on paper, and even as laid down on paper, it opened into, or led into, nothing; it was even on paper what we call a blind alley." We have not been furnished with all the evidence, but the judge further said: " A number of witnesses, beginning with Mr. Vankirk, who, with his partner, Leeds, built the house of the plaintiff (below) a great many years ago, certainly more than thirty years, and Mr. Lanning, who put up the factory there in 1850, and many others, whose names I do not now recall, testify that this *locus in quo* was fenced across up to the plaintiff's house, and in the exclusive use and enjoyment of the parties, through whom the defendant claims title, and by the defendant himself, for nearly thirty-five or forty years. In point of fact, it seems that no one knew or heard of the existence of this street, until lately discovered as a boundary in the deeds, by the surveyor." The correctness of this statement of the testimony was not questioned on the argument. We see nothing to contradict it. Thus it appears not only that this "blind alley" was never opened, but that from 1850 down to the commencement of this suit in 1876, it was enclosed by a fence and used in common with the other lands by the plaintiff in error, and by those from whom he derived title. No denial of that right to the exclusive use appears to have been made by any claimant of the title of the defendants in error, during all that time. It is not shown that the defendants in error, or their predecessors in title or possession, ever had any openings for egress or ingress into this alleged alley, or for light or air.

The question now presented is, whether the defendants in error can sustain this action under an implied covenant made more than twenty-one years before suit brought, when no possession was ever given or taken under the deed. This suit is not between any of the parties to that deed. It is not an action of covenant based on the contract. It is for a tort. The claim to recover rests on the alleged tort of the plaintiff in error, in erecting and maintaining extensive buildings on the land claimed to be a street. The view we take of the case, makes many of the questions relating to an action of covenant irrelevant, and we therefore refrain from considering them. The complaint of the defendants in error is not for the disturbance of an easement once enjoyed, but substantially to recover in an action *ex delicto* for damages to a right, based on an implied covenant, of which they never had any possession. After this great lapse of time, we think the present action cannot be sustained under the whole evidence, and the jury should have been so instructed. The sixth assignment is therefore sustained. It is unnecessary to consider the others any further than they are covered by what we have already said.

Judgment reversed.